Daniel Bernard **ROWAN**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 73–130.

United States District Court,
C. D. California.

May 31, 1973.

ORDER DENYING MOTION PURSU-
ANT TO § 2255 OF TITLE 28
UNITED STATES CODE

HAUK, District Judge.

The Petitioner, incarcerated at Terminal Island, brings this Motion pursuant to 28 U.S.C. § 2255, seeking a reduction of the sentence imposed by this Court on November 9, 1971. Because every point raised in this petition is fully answered in the official record of his conviction and in the Reporter's Transcripts, Volumes I and II, there is no need for a hearing. Devinney v. United States of America, [Slip Opinion # 72–2510, dated February 20, 1973]; Jack v. United States, 435 F.2d 317, 319–320 (9th Cir. 1970), cert. denied, 402 U.S. 933, 91 S.Ct. 1530, 28 L.Ed.2d 867 (1971).

Petitioner makes the following contentions:

1. There was a breach of an agreement by the prosecution not to prosecute in No. 8388–Crim. a violation of 18 U.S.C. § 501.

2. Counsel refused to prepare a case or make any motions, saying that this Judge was out to "get" him, and he would not take a chance of having his license revoked because the Judge had a grudge against him.

3. The Court denied the right to subpoena witnesses.

4. The Court offered a 2-year sentence, but yielded to the Government's insistence on a 3-year sentence.

In the light of the foregoing, he asks that the sentence be modified to two years. A brief history of the proceedings and the indictments involved is necessary to show that all of these conten-

tions are frivolous and absolutely refuted by the record.

On July 8, 1971, a call of the calendar revealed that this Petitioner was a defendant in Indictment No. 7833 charging 27 counts of mail fraud in violation of 18 U.S.C. § 1341; Indictment No. 8387 also charing 27 counts of mail fraud was trailing for disposition; Indictment No. 8388, 1 count of unauthorized use of postal meter in violation of 18 U.S.C. § 501; and No. 8454 which was a transfer from the Southern District of California for a plea of guilty under Rule 20. [It is noted that No. 8387 was a superseding indictment to No. 7833, and the latter numbered case was dismissed in proceedings on October 24, 1971 (R.T. Vol. II, 37).]

On July 8, 1971, the defendant entered his plea of guilty in No. 7833 to Counts 1, 2, 18, 19, 26 and 27 after indicating that he had read, understood and signed a statement of his constitutional rights (R.T. Vol. I, 10). He also entered a plea of guilty to the one Count in Indictment No. 8388 (R.T. Vol. I, 12), as well as to the two Counts in Indictment No. 8454 under Rule 20 (R.T. Vol. I, 13).

The Court questioned this Petitioner extensively concerning his understanding of the nature of the charges, possible penalties on each, voluntariness of the plea and the factual basis thereof (R.T. Vol. I, 15–31). It is specifically noted that Petitioner testified under oath that no promises of reward or special treatment had been made to him (R.T. Vol. I, 20) and that he pleaded guilty in No. 8388, the postage meter charge about which he now claims that there was an agreement not to prosecute (R.T. Vol. I, 25). No such statement was made at the time of the plea, and August 2, 1971, was the date set for probation hearing and sentence.

At the time of sentence, retained counsel made a plea for leniency, and this Petitioner indicated that he had nothing to add (R.T. Vol. I, 41). Petitioner had been granted probation on a previous mail fraud conviction, and the Court then proceeded to pronounce sentence. On Count 1 of Indictment 7833, he was committed to the custody of the Attorney General for a period of 5 years, to be eligible for parole under the provisions of 18 U.S.C. § 4208(a)(2). (R.T. Vol. I, 43). The same sentence was imposed on each of the other counts of that indictment to which Petitioner had plead guilty, namely Counts 2, 18, 19, 26 and 27, all to run concurrently with the sentence on Count 1. In No. 8388, he was sentenced to serve 3 years concurrently with the sentences previously imposed. In No. 8454 (the Rule 20 case from the Southern District of California), the Court also imposed a 5-year sentence, but recommended placement in the Los Angeles County Treatment Center Complex for a period of six months, the balance of the sentence to be suspended (R.T. Vol. I, 43–45). The same sentence was given on Count 2 of Indictment 8454, to run concurrently. (R.T. Vol. I, 45).

Counsel for this Petitioner then protested that he was told that this Court never gave more than a one-year sentence in these cases (R.T. 46). After a lengthy discussion, in which the Court stated that it was not engaging in plea bargaining and never made advance promises about sentences, the Court ordered the guilty pleas withdrawn and stricken, and not guilty pleas reinstated (R.T. Vol. I, 52–53, 58). No. 8454, the Rule 20 case, was remanded to the Southern District of California (R.T. 55). The consolidated cases Nos. 7833, 8387 and 8388, were set for jury trial on October 12, 1971. (R.T. Vol. I, 56, 59).

Pretrial discovery proceedings took place on September 27 and 28, 1971, at which time the question of subpoena of witnesses arose. The Court urged counsel for Petitioner and the Government to try to reach a stipulation, if possible, but was informed that the Petitioner refused to stipulate (R.T. Vol. II, 7, 11). Counsel contended that out of some 500 witnesses who had responded to Petitioner's advertisements, about 117 received some merchandise, although not

exactly what they expected. Since the Government was willing to stipulate everything the witnesses could possibly testify to, the Court refused to order them subpoenaed (R.T. Vol. II, 11), especially since at one time this Petitioner had thirty-thousand dollars in his bank account and was able to subpoena them himself (R.T. Vol. II, 12).

Counsel then listed 20 people for whom subpoenas by the Court were requested, all of which were denied as being too far from the jurisdiction of the Court. (R.T. Vol. II, 17–20). It was admitted that none of these witnesses had been interviewed, so there was no certainty as to the nature of their testimony. Moreover, the Court stated that testimony to the effect that certain people had not been cheated had no relevance to nor bearing on the charge that others had, in fact, been cheated. (R.T. Vol. II, 21). There is no showing that this was an abuse of discretion.

On October 14, 1971, as previously stated, Indictment No. 7833 was dismissed and superseding Indictment No. 8387 was consolidated for trial with No. 8388 and set for November 9, 1971 (R.T. Vol. II, 37).

On the date set for trial, the jury and witnesses were excused, and the Court reviewed the proceedings in the case to date (R.T. Vol. II, 46–51). During a meeting in chambers, the Court said, "I want the Defendant to understand what has been going on here and to have full knowledge of what his counsel and Government counsel have been doing so there will be no doubt about it . . ." (R.T. Vol. II, 51). In this Petitioner's presence, it was stated by Petitioner's counsel that the three-year sentence recommended by and acceptable to the Government would be acceptable to him with a provision of time for remand [suspension of execution] because of personal problems (R.T. Vol. II, 52).

The Court stated that it usually accepted Government recommendations on sentence, and would probably go along with a 3-year term, although originally the Court had imposed a 5-year sentence, since the probation report had already been considered. Petitioner indicated that he understood (R.T. Vol. II, 53–54). At no time was there ever any mention of a 2-year term or any other possible sentence.

This Petitioner then, on that date of November 9, 1971, entered a plea of guilty once again to Counts 1, 2, 18, 19, 26 and 27 of the superseding Indictment No. 8387 and guilty to the one-count Indictment No. 8388 (R.T. Vol. II, 59–60).

Once again the Petitioner was sworn and the Court interrogated him to determine the voluntariness of the pleas and the factual basis therefor.[1] Petitioner

---

1. THE WITNESS: Yes, I do.

THE COURT: You understand, do you not, Mr. Rowan, that at this time and at all times since your arrest in these matters to which you plead the guilty, you have had the right to be warned as follows: the right to remain silent; that anything you may say can and will be used against you in Court; that you are entitled to be prepresented by counsel at all proceedings including this one; that if you cannot afford the price of an attorney one will be appointed for you.

Do you understand your rights?

DEFENDANT ROWAN: Yes, your Honor.

THE COURT: You have, as your attorney, Mr. Atkins and he is with you here.

Is he appointed for you or did you retain him on your own?

DEFENDANT ROWAN: He has been retained.

THE COURT: He has been retained, alright.

Have you made any statements or admissions or confessions of any kind with respect to the these matters to which you plead guilty without having been warned of these rights ahead of time?

DEFENDANT ROWAN: No, sir.

THE COURT: Are you pleading guilty because of any promise of reward, special treatment, special leniency or special sentence other than the plea bargaining which we have previously discussed here in front of you?

DEFENDANT ROWAN: No.

THE COURT: Are you pleading guilty because of any threat of violence, or use of force or threats thereof against you or any member of your family?

DEFENDANT ROWAN: No.

THE COURT: Are you pleading guilty freely and voluntarily of your own accord?

DEFENDANT ROWAN: Yes.

THE COURT: Is that right?

DEFENDANT ROWAN: Yes.

THE COURT: All right.

Now, you understand, do you not, that the count one here of the indictment number eight-three-eight-seven charges, briefly, that on or about August 1, 1970 and continuing to May 1, 1971, you devised and intended to devise a scheme and artifice to defraud by use of the mails and doing so by means of a false and fradulent representation of promises concerning mail order, sales of movies and/or photographs of an obscene or pornographic nature—obsecene and pornographic nature, and as part of this scheme you used the mails and have a postage meter number issued to you and that you would send out advertisements of a tiltilating nature promising obscene and pornographic photographs and movies and then for the purpose of executing this scheme you caused to be delivered a certain—about November 20, 1971, you caused to be delivered a letter addressed to John Rodriquez of 5466 Santa Monica Boulevard, Apartment number 118, in Los Angeles from Thomas Staley, Route 7, Box 189A, Eugene, Oregon.

You used that Staley name as a letter drop or a return address, right?

DEFENDANT ROWAN: The address in Santa Monica.

THE COURT: Oh, the address to Rodriquez?

DEFENDANT ROWAN: Yes.

THE COURT: Oh, I see.

Better put it this way.

First of all, you sent out an advertisement to this Mr. Staley and he sent this letter back to you; is that right?

DEFENDANT ROWAN: Yes.

THE COURT: All right. Would you tell me briefly what you did in that connection.

Did this letter state the things set forth in count one:

"I don't have a company. It is just me and my wife.

"I am not like the other people who take your money and you get nothing, or send you lousy movies of naked girls.

I get my movies and pictures from Mexico so you know they are good, and you always know you will get them, and you always know you will get them, because I send them C.O.D.

DEFENDANT ROWAN: Yes.

THE COURT: You recieved a letter from Staley and money, right?

DEFENDANT ROWAN: Yes.

THE COURT: How much money was in it?

DEFENDANT ROWAN: I suppose it was up to forty dollars.

THE COURT: What did you send him back?

DEFENDANT ROWAN: Probably a film.

THE COURT: Just nudity?

DEFENDANT ROWAN: No, he—

THE COURT: No sexual intercourse of any kind?

DEFENDANT ROWAN: No.

THE COURT: Count two charges that, re-alleging all the things in count one, on or eighteen about December 5, 1970, for the purpose of executing this scheme you place in a depository for mail a C.O.D. parcel number 5685802, addressed to T. H. Staley to be sent and delivered by the Post Office department—is that the movie that you send to Staley?

DEFENDANT ROWAN: Yes.

THE COURT: All right.

Count nineteen charges that incorporating count eighteen which says that you caused to be sent back to you—that you sent to—that you made the following representations:

"You tell us the kind of film you want and we will send it immediately via Air Mail.

"On approval: this means that when you receive your film, if you are not one hundred per cent satisfied—you return the film immediately for refund.

"MONEY BACK GUARANTEE."

Then, you placed in the mail on December 24, 1970, a C.O.D. parcel addressed to William Perry, 1521 Debbie Lane, Route 4, Humboldt, Tennessee—then it alleges in count nineteen—you plead guilty to count nineteen, is that right, so that is count eighteen I just read to you. Did you do that?

DEFENDANT ROWAN: Yes.

THE COURT: All right, then count nineteen says that on January 28, 1971, you got a letter back addressed to J–R Productions from this William O. Perry; is that correct?

DEFENDANT ROWAN: Yes.

THE COURT: You got some money in it?

DEFENDANT ROWAN: I guess.

THE COURT: And what did you send him—anything?

DEFENDANT ROWAN: I wouldn't remember off hand, but probably.

THE COURT: It was not anything obscene, right?

DEFENDANT ROWAN: No.

THE COURT: Just nudity, not any obscene or pornographic sex acts or organ or function of expression?

DEFENDANT ROWAN: No.

THE COURT: All right.

We are over to count twenty-six, is that right—yes, count twenty-six.

Count twenty-six says that it is further a part of this scheme as alleged in count one that you had office space at 5478 Wilshire Boulevard, Room 404, this firm name, J–R Productions, and you made a representation, along about January 1, 1971, to the effect:

"I am taking the liberty of sending you my special $300.00 package of my products (at one fourth the price) with a complete guarantee of satisfaction.

"The package the mailman will deliver—will contain an excellent sampling of my best eight milemeter heterosexual, homo, animal, and lesbian film".

Homo—animal—lesbian film.

About January 11, 1971 you sent a letter addressed to Kenneth E. DuBoir, 354 E. 8th Street, South Boston, Massachusetts—

DEFENDANT ROWAN: Yes.

THE COURT: You sent those representations in that letter?

DEFENDANT ROWAN: Yes.

THE COURT: Count twenty-seven of the charge is that on or about January 15, 1971, you got back a letter from this Kenneth DuBoir with some money in it, right?

DEFENDANT ROWAN: Yes.

THE COURT: And did you send him anything—send him some film?

DEFENDANT ROWAN: Did it contain any of these things that you indicated in your letter to him of heterosexual, homo, animal, and lesbian film?

DEFENDANT ROWAN: No.

THE COURT: All right. The court is satisfied that there is a factual basis to the pleas for the six counts indicated in indictment 8387.

Now, as to indictment 8388, that charges that on or about March 20, 1971, you knowingly and willfully caused to be printed by Postalia Meter Number 601849, postage meter impressions of United States Postage, of the kind authorized and provided by the Post Office Department on numerous parcels without the special authority and direction of the Department, in violation of Title eighteen, United States Code, section 501—unauthorized use of meter stamp impression.

Did you do that?

DEFENDANT ROWAN: Yes, sir.

THE COURT: In that connection, what did you do, use this postal meter without having it authorized at the Post Office Department?

DEFENDANT ROWAN: Yes.

THE COURT: You sent some letters out under it?

DEFENDANT ROWAN: Yes.

THE COURT: Marked with that meter?

DEFENDANT ROWAN: Yes.

THE COURT: All right.

The Court is satisfied there is a factual basis for the plea in indictment number 8388.

Now, let me ask you this, do you feel alright today?

DEFENDANT ROWAN: Yes.

THE COURT: Have you taken any drugs, narcotics, pills, stimulants, depressants, liquor or marijuana of any kind today?

DEFENDANT ROWAN: No.

THE COURT: Are you under the care of a Doctor for any physical, mental or emotional problem affecting your ability to make decisions in the most important of your own affairs?

DEFENDANT ROWAN: No.

THE COURT: Have you discussed all the facts and the circumstances surrounding these allegations and matters charged in these counts to which you have plead guilty, with your attorney?

DEFENDANT ROWAN: Yes.

THE COURT: Have you held anything back from him?

DEFENDANT ROWAN: No.

THE COURT: Do you think he knows enough to be able to confer with you properly and advise you correctly?

DEFENDANT ROWAN: Yes.

THE COURT: Has he done anything that you are unhappy with or dissatisfied with in this case?

DEFENDANT ROWAN: No.

THE COURT: Do you want any further explanation about your constitutional rights, the charges here or the plea bargaining which has gone on before your plea, here, of which you are aware?

DEFENDANT ROWAN: I have one, yes.

THE COURT: What is that?

DEFENDANT ROWAN: To which prison would I be sent?

THE COURT: That is up to the Attorney General. I can make a recommendation.

What recommendation would you like?

DEFENDANT ROWAN: Terminal Island I suppose.

THE COURT: I will so recommend, all right.

Anything else?

stated that his attorney was retained (R.T. Vol. II, 61), that he had discussed everything with counsel, and that he was satisfied with everything done by counsel in the case, expressing confidence in his knowledge and ability, and disclaiming any dissatisfaction (R.T. Vol. II, 70). The Court further discussed the details of the probation report with the Petitioner.[2]

DEFENDANT ROWAN: No.

THE COURT: All right.

Now, I have received previously, as you know, the probation report dated August 2, 1970, which you and your attorney have discussed and looked at; is that correct?

DEFENDANT ROWAN: I have not seen the probation report.

THE COURT: Your attorney has discussed it with you?

DEFENDANT ROWAN: Yes.

THE COURT: And told you what is in it, briefly?

R.T. Vol. II, 61-71

2. THE COURT: What is that?

DEFENDANT ROWAN: To which prison would I be sent?

THE COURT: That is up to the Attorney General. I can make a recommendation.

What recommendation would you like?

DEFENDANT ROWAN: Terminal Island, I suppose.

THE COURT: I will so recommend, all right.

Anything else?

DEFENDANT ROWAN: No.

THE COURT: All right.

Now, I have received previously, as you know, the probation report dated August 2, 1970, which you and your attorney have discussed and looked at; is that correct?

DEFENDANT ROWAN: I have not seen the probation report.

THE COURT: Your attorney has discussed it with you?

DEFENDANT ROWAN: Yes.

THE COURT: And told you what is in it, briefly?

DEFENDANT ROWAN: No, he actually has not.

THE COURT: Well, let me tell you.

The report goes into the matters charged against you which you plead guilty to here. They have discussed it with the Postal Inspectors, of course, who have given the details of it and it is noted that you refused to meet with the Postal Inspectors and offered no co-operation during the investigation and they tell about your arrest and then about your bank accounts under John Rodriquez and J-R Productions, which were investigated.

It also gives your version of the offense, acknowledging that you were offering adult six items, mainly pictures and films and failed to ship the goods promised and you damaged—that you damaged the Postal Meters, used them illegally and experienced severe financial pressures and that now that you are out of the mail order business and never intend to return to it.

Your prior record is set forth. It is an offense of 2-18-1960 where your sentence was suspended and you were given five years probation under the Federal Youth Probation and five hundred dollars fine, that was Philadelphia, using the mail in a scheme to defraud where you plead Nolo Contendere.

Do you understand that?

DEFENDANT ROWAN: Yes.

THE COURT: There is another offense of March 29, 1963, mailing deflamatory letters and you were given five days in the County Workhouse in Philedelphia.

DEFENDANT ROWAN: Yes.

THE COURT: Then there is the family history, you are younger of two children. Your father worked most of his life as a truck driver and your mother worked for the phone company, and so on, and that you are an intelligent child and you have a mail fraud convicition in 1960 and so forth.

You established residence with your father in 1964 in Petaluma and got an apartment in San Francisco and then about your Home and neighborhood that they point out your homosexual tendencies and your association with such people in San Francisco and in Hollywood where you were living with a fellow named Tuwi Ras, who is a student who is also a homosexual. You were a Catholic. At least you haven't been to church since leaving Philadelphia.

The physical things about you, you have hemmeroid problems and so on but you deny any use of marijuana, narcotics and dangerous drugs.

Then, your physcological—phychiatric goes back in 1960 in the adjustment reaction of adolescence and your I.Q. Your homosexual environment, you're better adjusted now, and so forth and then your employment record and finally, the evaluative summary where they state that you are not in their view the proper person for parole at this time.

You have a very complex emotional set up. I have your letter addressed to me

Finally, specifically referring to the Government's willingness to see such a sentence imposed, the Court sentenced Petitioner to the custody of the Attorney General for three years on Count 1, with parole eligibility under 18 U.S.C. § 4208(a)(2). At this Petitioner's request, the Court recommended that the time be served at Terminal Island, if at all possible (R.T. Vol. II, 76). The same sentence was imposed on all the other counts to which Petitioner had plead guilty, namely Counts 2, 18, 19, 26 and 27 of Indictment No. 8387, to run concurrently, and the same sentence was imposed in Indictment No. 8388, also to run concurrently with the sentences previously imposed, and concurrently with any sentence which might be imposed in the Indictment No. 8454 in the Southern District of California to which the Court had returned it, and concurrently with any State sentence which might be imposed on pending charges. Also, at Petitioner's request that he be permitted to handle some personal affairs, the Court allowed him to remain on bail until December 1, 1971, staying execution of the sentences until that date at 10:00 a.m. when "he is to submit himself to the United States Marshal for commitment." (R.T. Vol. II, 78-79).

At the conclusion of sentencing, Petitioner's counsel thanked the Court, saying the sentence had been most generous and included many matters which had not been previously agreed upon (R.T. Vol. II, 79). It is quite apparent that contrary to Petitioner's contention, there was no "grudge" nor animosity between the Court and counsel. The record shows that counsel acted diligently and made an even more advantageous sentence-arrangement than that which had earlier been imposed.

■ It is recognized that plea bargaining is a judicially approved procedure. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27. L.Ed.2d 162 (1970). It is impossible to tell whether this Petitioner is having second thoughts about his pleas to agreed-upon sentences, or whether he is employing some hindsight; but it is obvious that the claims here asserted were subsequently conceived. They are completely unsubstantiated. Since his pleas were counselled by a competent attorney since the Court determined that they were voluntary and that there were factual bases for each plea, they are not subject to this attack.

---

dated August—it is Wednesday—August 4—August, rather than April, I think you meant, which I have read and considered of course and I see no need for further probation reports.

Does counsel?

MR. ATKINS: No, I don't.

THE COURT: Or the Government?

MR. BONNER: No.

DEFENDANT ROWAN: I would like to ask a question. I don't know what the Postal Inspector means by I didn't co-operate in his investigation.

Does he mean after you were arrested?

THE COURT: Before.

DEFENDANT ROWAN: Before, yes.

THE COURT: After you were arrested, it shows co-operation afterwards. It shows co-operation afterwards. At least you talked to the Probation Officer and I assume you talked to the Postal Inspectors but I suppose they can talk to themselves.

MR. BONNER: These aren't the Postal Inspectors, your Honor.

THE COURT: Does the Government attorney say he did co-operate after his arrest?

MR. BONNER: Yes, your Honor, I think that can generally be said.

THE COURT: All right. The Court has that in mind and is now prepared to pass sentence.

The Court will hear anything that is desired to be said by counsel or the Defendant or both in his behalf.

MR. ATKINS: I have nothing further.

THE COURT: The Defendant.

DEFENDANT ROWAN: Nothing.

THE COURT: The Government.

MR. BONNER: Nothing.

THE COURT: All right.

In the light of the plea bargaining, of course, the Government being willing to see the imposition of a three year sentence, the Court then—is there any legal reason why sentence should not now be R.T. Vol. II, 71-75

Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The Petition, files and records conclusively show that Petitioner is entitled to no relief, and no hearing is necessary or required. 28 U.S.C. § 2255.

It is therefore, hereby ordered that this Motion pursuant to 28 U.S.C. § 2255 be, and the same is, hereby denied.